Peirsol v. Roop.

---

## WILLIAM H. PEIRSOL et al.

### v.

## LYDIA NORTH ROOP et al.

### [Filed April 26th, 1898.]

1. When, by a will, a power of sale is given to executors, to be exercised
with the consent of the widow, signified by her joining in and becoming a
party to the deed, the exercise of the power is dependent upon the joining by
the widow in a deed as prescribed by the testator, and on her death, without
having consented in the mode prescribed, the power is gone.

2. Where there is no direction in the will to sell the real estate, or to con-
vert the whole estate into money, and the residue is given as "my residuary
.estate, real and personal," in equal shares to sons and daughters, with a pro-
vision that the daughters' shares shall be invested in bond and mortgage or
.city loans, and that the principal sum of it shall be paid over to subsequent
legatees, the direction to invest and the bequest over of the principal sum will
be construed to apply only to the personalty of the share so given to the
.daughters.

3. Where a bequest in a will gives an absolute estate of personal property
to the testator's daughters, but provides for its investment by trustees, and the
payment of interest to the daughters during their lives, and afterwards a sub-
sequent bequest gives an absolute estate in the same portions to the children
of the daughters, the first bequest to the daughters will be held to be of a life
interest only, and the trustees will be directed to hold and invest the fund, pay

the interest on her share to each of the daughters during her life, and, on her death, the principal to her children.

4. Where the bequest gives a portion of personalty to a daughter during her life, and, on her death, to her children, and if she should die unmarried and without leaving lawful issue her surviving, then over to her surviving brothers and sisters, the gift over takes effect in case the daughter should not during her life marry, or should not leave issue surviving her at the time of her death.

On bill, &c.

This bill is filed by the complainants as executors and trustees under the last will of Joseph N. Peirsol, against his devisees and legatees, who were also his heirs-at-law, for the purpose of obtaining the instruction of this court touching the powers and duty of the executors and trustees with respect to certain trusts imposed upon the complainants by the terms of the will.

The decedent, Joseph N. Peirsol, died seized of lands in Atlantic county, on March 15th, 1879. His will bears date January 29th, 1879, and was proved before the register of wills of the city of Philadelphia, March 21st, 1879, and an exemplified copy under the New Jersey statute was obtained to be recorded in the surrogate's office of Atlantic county on October 22d, 1879. The testator, after directing the payment of his debts, gives all the rest and residue of his property, real and personal and mixed,

"unto my executors and trustees hereinafter mentioned, their executors, administrators and assigns, in trust, nevertheless, to place and continue the personal estate thereof at interest on Bonds and mortgage secured on good landed security or improved property in the City of Philadelphia, or invest the same in State or City loans or funds from time to time, and to call in, replace and reinvest the same when and as often as they, my said executors and trustees, may deem proper, and to pay the net interest and income arising therefrom and also the net rents, issues and profits of the real estate thereof when and as the same shall be received unto my beloved wife, Mary Ann Peirsol, for and during all the term of her natural life, if she so long remain my widow, single and unmarried, but not otherwise, and to her good care and guidance and parental counsel I entrust my children for maintenance and education during their respective minorities without any charge to them therefor. [The testator here provides for the disposition of his estate in case his wife, Mary Ann Peirsol, should marry after his death. No such marriage took place.]

Peirsol *v.* Roop.

"And from and immediately after the decease of my said wife I give and bequeath my said residuary estate, real and personal whatsoever and wheresoever, including the said principal sum of thirty thousand dollars, unto all and every of my child and children that shall be living and the lawful issue of such of them as shall then be deceased, their respective heirs, executors administrators and assigns forever, in equal parts and shares if more than one, so nevertheless that such lawful issue take and receive such part and share only as his, her or their deceased parent would have had and taken if then living.

"*Item.* It is my will and I desire that the share of my estate to which my daughter shall be entitled upon the decease or intermarriage of my said wife, shall be invested by my executors and trustees hereinafter named in bond and mortgage secured on good landed security or improved property in the City of Philadelphia or in some good and productive State or City Loans or Funds, and to pay from time to time the net interest and income arising therefrom when and as the same shall be received, unto each of my said daughters, for their sole and separate use during her or their natural lives, without being in anywise subject to the control or interference of any husband she or they might have, and her or their receipt alone shall be sufficient discharge to my said executors and trustees therefor; and from and immediately upon the decease of such daughter or daughters, I do give, devise and bequeath the principal sum of such share of my residuary estate to which such deceased daughter or daughters was entitled to, unto all and every the child or children of such deceased daughter or daughters, their respective heirs, executors, administrators and assigns forever, in equal parts and shares, so nevertheless that such lawful issue take and receive such part and share only as his, her or their deceased parent would have *have* been entitled to; but in case any of my said daughters should die unmarried and without leaving lawful issue her or them surviving, then and in such case I do give, devise and bequeath such part and share of my said residuary estate to which such daughter or daughters was entitled to unto all and every her or their surviving brothers and sisters, their respective heirs, executors, administrators and assigns forever in equal parts and shares.

"*Item.* I nominate, constitute and appoint my sons, William H. Peirsol and Joseph N. Peirsol, Junior, executors and trustees of this my last will and testament, and I do hereby authorize, direct and empower them, my said executors and trustees, by and with the consent and approbation of my said wife, Mary Ann Peirsol, signified by her joining in and becoming a party to any deed of conveyance or other instrument of writing at any time after my decease that they may deem proper and advantageous to my estate, to sell and dispose of all or any part of my real estate, either at public or private sale, for the best prices that can *be* reasonably be had or gotten for the same, and to grant and convey the same or any part thereof unto the purchaser or purchasers thereof, his or her or their heirs and assigns forever, without any liability on the part of the purchaser or purchasers thereof or their heirs or assigns, to see to the proper application of the purchase-money."

By a codicil to the will, which codicil is also dated January 29th, 1879, the testator makes the following recital:

"Whereas, by the second item of this my will, I do authorize and direct my said executors and trustees therein named to place and continue my personal estate at interest on Bond and Mortgage, or invest the same in State or City Loans or Funds," &c.

And the codicil then provides that certain stocks may, at the discretion of the trustees, remain as invested at the time of his death, or may be disposed of by the executors and trustees at their discretion, and the executors and trustees are exonerated from loss by reason of any depreciation of the stock.

The executors having proved the will entered into the possession of the whole estate of the testator, including the possession of the Atlantic county property, and they have continued in the possession and management of it up to the filing of the bill in this cause.

At the time of the testator's death, he left him surviving his widow, Mary Ann Peirsol, and his six sons and three daughters. Mrs. Peirsol, the widow of the testator, died on December 30th, 1886, without having married again. An unmarried son died on November 7th, 1888, childless and intestate. There are now surviving three married sons (one of whom has a child), two unmarried sons, two unmarried daughters and one married daughter, eight in all, and all of them are defendants in this bill. It should be observed that all the children survived the testator and his widow.

By deed dated April 3d, 1894, one of the sons conveyed to the other four all of his undivided one-eighth part in the Atlantic county property.

The lands in Atlantic county are unimproved, and produce no substantial income, except one property on Michigan avenue, in Atlantic City, which consists of dwelling-houses, the rents from which have been collected by the trustees. The trustees, during the lifetime of the widow, paid over to her all the income which was derived from the estate, in accordance with the directions of the will. They have retained possession of the estate, including

the Atlantic county property, since the death of the widow, and now disputes have arisen between the trustees and the daughters of the testator as to whether or not the trustees, since the death of the widow, have, under the terms of the will, any control over the interests of the daughters in the Atlantic county real estate, the latter insisting that by the true construction of the will they are the absolute owners of that property free from any trust, while the trustees are uncertain whether, by the terms of the will, it is their duty to retain the control and possession of the Atlantic county real estate in obedience to the trust which they have undertaken to perform. The daughters insist that it is the duty of the trustees either to sell the real estate or to convey or surrender their shares to them, the daughters. The trustees ask to be advised as to whether they have any power of sale over the real estate since the death of the widow, and whether they may safely, under the terms of their trust, surrender the real estate to the daughters, or whether it is included in that part of the residuary estate directed by the will to be retained by them during the life of the daughters, and they ask to be instructed as to their power and authority under the will touching the rights and interest of the daughters in the lands in Atlantic county.

All the facts set forth in the bill are admitted to be true by the answer. All the defendants are of full age.

*Mr. Thomas E. French*, for the complainants.

*Mr. Samuel H. Richards*, for the defendants.

GREY, V. C.

By the terms of the testator's will, after the payment of his debts, he gives all his estate of every character to his executors and trustees upon a trust expressed in the will, by which he directs the trustees " to place and continue the *personal* estate thereof at interest," &c., and to pay the income therefrom and also " the net rents, issues and profits of the real estate thereof" to his wife during the term of her natural life, so long as she

remains his widow, and to her care and guidance he entrusts the care and maintenance of his children.

The first disposition of the testator gives the residue of his estate, real and personal, to the trustees, to secure to his wife the income thereof during her life or widowhood, thus indicating the dominant purpose in the will, namely, the support of the widow and children. Though his residuary estate included both real and personal, he does not use any words which give a fee to the trustees. But on the widow's death the testator gives the whole residue, real and personal, in fee, by apt words, to such of his children as may then be living, and, *per stirpes*, to the issue of those who may have precedently died, their heirs, executors, administrators and assigns, as tenants in common, in equal shares. This gift to his children generally and to the issue of any deceased child of the residue of his real and personal estate, if not modified elsewhere in the will, would have vested in the daughters as well as in the sons who survived their mother an absolute estate in fee-simple in their several shares, in both the residuary real and personal estate.

It should be noted that the period when the estate of the children of the testator vested was at the time of the death of their mother, and that those of them then took, who then survived. In actual fact they all then survived, so that the gift to the issue of any deceased child did not operate.

The testator then expresses his will and wish that the share of the daughters shall be *invested* by the executors and trustees on *bond and mortgage or in city or state loans*, and that the interest and income therefrom shall be paid to the daughters for their separate use, during their lives, free from any husband's control. This clause can only apply to that portion of the residuary estate which can be invested. In the next clause the will refers to "the *principal sum*" of such shares. By these expressions the testator must be understood to intend an investment and care-taking of the personalty portion of the residuary estate, and not of the real estate portion, for the words of the will show that he knew the different characteristics of real and personal property, and that he intelligently used words apt to describe

them. These directions for *investment* and for payment of *principal sums* are not such as would have been used by the testator if he had the disposition of real estate in his mind, for though they are forceful when referring to personalty, they are senseless if applied to real estate. Town lots could not be invested, nor could· they be paid over in principal sums. The direction that the trustees should invest must, therefore, be held to apply only to the personalty portion of the daughters' shares.

The testator makes no further reference to the portions of his estate which he gives to his sons, but after expressing his wish that the trustees should control the personalty of his daughter's share, as above shown, he again deals with the daughters' shares, as follows:

"From and immediately upon the decease of such daughter or daughters, I do give * * * the principal sum of such share of my residuary estate * * * unto * * * the child or children of such deceased daughter or daughters, their * * * heirs * * * and assigns forever."

Further defining the share of the child to be such as the deceased parent was entitled to, and providing that "in case any of my said daughters should die unmarried, and without leaving lawful issue her or them surviving" he gives the share of· the deceased daughter to her surviving brothers and sisters, in fee, in equal portions.

I have indicated my view that the absolute gift on the death of the wife of the residue of the children then surviving passed title to the daughters in both the real and personal portions of the residue, but that the direction for investment by the trustees applied only to the personal portion. The gift of the "principal sum of such share" of the daughters applied only to the personal part of the daughters' portions, and it is only with this personal part that the testator deals in his subsequent disposition of the daughters' shares.

The above-quoted absolute gift of the principal sum or personal portion of the daughters' shares to their children, is a bequest apparently repugnant to the first absolute gift to the daughters themselves. This first gift to the daughters and the

subsequent limitation over to the surviving brothers and sisters in case any daughter should die unmarried and without issue her surviving, would indicate that the testator intended the daughters to have a vested estate in the principal sum referred to, but subject to be defeated as to each daughter in case she should not during her life marry (*Maberly* v. *Strode*, *3 Ves. Jr. 454*), and should not leave any issue surviving at the time of her death. These latter words, used in the will, would mean a definite failure of issue, even without the operation of the statute of 1851. *Gen. Stat. p. 3761 § 25.* Such limitations over of personal property upon a definite failure of issue have been recognized and enforced. *Porter* v. *Bradley*, *3 T. R. 146*; *Ackerman* v. *Vreeland*, *1 McCart. 25*; *Hull* v. *Eddy*, *2 Gr. 170*; *Holcomb* v. *Lake*, *1 Dutch. 613*; *Rowe* v. *White*, *1 C. E. Gr. 411*. If the daughters took a fee, subject to be defeated upon the conditions subsequent above stated, their performance of those conditions would give them an absolute estate. If the daughters should not perform the conditions, the will gives an absolute estate over to the surviving brothers and sisters. In either case nothing would remain to be given over to the children of the daughters. The gift to the children of the daughters is not expressed to depend upon any condition or contingency, but is an absolute gift over upon the daughters' death, of the principal sum of the share which has been just as absolutely given to the daughters themselves upon performance of the conditions.

Upon this construction it is impossible that both these gifts should stand. Either this second absolute gift to the children must be wholly rejected because inconsistent with the previous absolute gift, or it must be so construed as to modify the previous absolute gift and turn it into a life estate in the daughters.

In *Jones' Executors* v. *Stites*, *4 C. E. Gr. 326*, in construing a will having two successive absolute bequests of the same portion, Chancellor Zabriskie declared it to be well settled that "a devise of lands or bequest of chattels by words which would clearly give an absolute estate *will be construed into a devise or bequest for life only, if the will contains words giving it to another*

*upon the death of the first taker.* If the gift is absolute in terms, and not at all events limited over at the death of the first taker, but only on a certain contingency, as dying without issue living, then the title vests in the legatee absolutely, subject to be defeated on the happening of the contingency." In order to give effect to the whole will, the chancellor held the first gift to be of a life estate only.

In *Akers' Executors* v. *Akers, 8 C. E. Gr. 26,* the words of the first bequest to the testator's daughters were sufficient to vest an absolute estate in the *corpus* of the fund. There was also a provision directing the payment of interest on the fund to them, and the second gift to their children of the same fund was also an absolute bequest. The same learned chancellor held that the testator intended the principal of each daughter's share be invested during her life, and the interest only to be paid to her half yearly, and that at her death the principal share should go according to the second gift.

In the case under consideration, though the testator gave the daughters who survived their mother an absolute estate, yet he in express terms provides that the trustees shall invest and care for the fund and pay over the net interest to the daughters for their sole use during their lives. Considering this direction with the subsequent gift of the daughters' shares, upon their death, to their children, I think the construction given by Chancellor Zabriskie in *Jones' Executors* v. *Stites* should control the present case, and that the bequest to the daughters should be held to be a life estate, the custody and investment of the fund to remain in the hands of the trustee, who should pay to each daughter the interest on her share during her life, and on her death the principal to her children if she leaves any; but if any daughter should die not having married or leaving no issue her surviving at the time of her death, then to pay the principal to the surviving brothers and sisters of such daughter.

There is an inquiry in the bill touching the authority of the executors and trustees to exercise the power of sale. There is no other power of sale given in the will than that which is prescribed to be exercised by the executors and trustees with the

consent of the wife, signified by her joining in the deed. The assent of the wife and her joining in the deed were conditions necessary to the exercise of the power. Her death before it was exercised has made an end of the power, and no authority remains in the executors and trustees to make sale of the real estate. *Sugd. Pow. 319.*

The will of the testator should be decreed to have the meaning above indicated. The trustees should be instructed that they have no power, and have had none, since the death of the widow, to make sale of the land to convey a fee-simple or any other estate therein; that the title of the trustees in the residuary real estate terminated at the death of the widow, and then passed in fee-simple to the sons and daughters then surviving, as above stated; that the trustees have no duty to convey the shares of the daughters in the land, the will being self-executing and having vested a fee-simple in them by the operation of the devise therein expressed; that the title of the sons who survived their mother in the personal portion of the residuary shares vested in them absolutely at the death of their mother; that it is the duty of the trustees to invest the personal portion of the daughters' shares as directed by the will and to pay each daughter, during her life, the net interest of her share in the manner prescribed by the will, and the principal of any daughter's share, upon her death leaving children, to such children, and if she die without having married, or leaving no issue her surviving, then to pay over the principal of her share in equal portions among those of her brothers and sisters who survive her.

I will advise a decree in accordance with the above views.